```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION
```

BROTHERHOOD OF RAILROAD
SIGNALMEN,
                                     Case No. 15 C 10419
                Plaintiff,
                                     Judge Harry D. Leinenweber
        v.

CONNEX RAILROAD, LLC,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Brotherhood of Railroad Signalmen ("the Brotherhood"), sued Connex Railroad LLC ("Connex"), alleging Connex violated various provisions of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 *et seq.,* and requesting declaratory and injunctive relief. Connex filed a Motion to Dismiss the Complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction [ECF No. 11]. For the reasons stated herein, the Court grants the Motion to Dismiss.

### I. BACKGROUND

The following facts are drawn from the Brotherhood's Complaint and related exhibits. The Brotherhood is a labor union representing railway signalmen who work for Connex Railroad. The dispute centers on a Brotherhood member named Brandon Snyder ("Snyder"). On June 4, 2015, Snyder was working as a signalman at a railroad crossing station in Pompano Beach, Florida. The

railroad crossing devices at that station failed to activate while a train was passing through, although there was no accident as a result.

Connex officials believed Snyder should receive some form of discipline for the June 4 signal failure. Rule 47(a) of the parties' collective bargaining agreement ("the CBA") states that employees "will not be disciplined or dismissed without a fair and impartial investigation." (Decl. of R. Gus Demott at 2.) That rule also provides for various procedures to be followed in the event of any investigation. Evidently, Connex conducted a preliminary look into the incident that stopped short of a formal investigation. After discussing the matter with the Brotherhood officials representing Snyder, Connex sent Snyder a letter dated June 12, 2015, stating in relevant part:

> As a result of our discussion, you have agreed to waive your rights to a formal investigation with the following stipulations to be applied relative to your continued service with VTMI, Inc. [Connex's parent company]: 1) Actual service suspension of 60 calendar days; 2) Demotion to Signalman Status for a period of 6 months; [and] 3) Agreement to assist in any further root cause analysis required as part of the on-going investigation.

(Pl. Resp. Br. Ex. A.) Brotherhood representatives further discussed the terms of the letter with Snyder and recommended that he agree to this resolution. (Decl. of R. Gus Demott at 3.) Snyder thus signed the waiver agreement.

The next development ultimately triggered the present lawsuit: on September 17, 2015, Snyder received a letter from

Connex stating that his employment with the railroad was terminated immediately. The letter explained that the South Florida Rail Transit Authority ("SFRTA"), an entity separate from Connex, conducted its own investigation into the signal failure and Snyder's involvement. SFRTA then directed Connex to remove Snyder immediately and permanently from all work within SFRTA's territory. Connex complied, and curiously, Connex told Snyder that his "disqualification by SFRTA from providing services serves as a separate basis for termination, than the discipline imposed as a result of Connex investigation of the June 4 failure." (Pl. Resp. Br. Ex. B.)

The Brotherhood filed this suit on behalf of Snyder, seeking declaratory and injunctive relief under the RLA against Connex for its failure to follow the procedures outlined in the CBA.

## II. **LEGAL STANDARD**

The RLA governs the resolution of labor disputes between railways and their union employees. 45 U.S.C. § 151 *et seq*. There are two such categories of disputes, although they are legal terms of art not mentioned in the statute: "minor disputes" and "major disputes." *See, Consol. Rail Corp. v. Ry. Labor Execs. Ass'n,* 491 U.S. 299, 302 (1989). The distinction between the two terms is not precise, but in general, major disputes are those involving the creation or modification of contractual rights, while minor disputes are those involving the enforcement or interpretation of

those rights. *See, Consol. Rail Corp.*, 491 U.S. at 302; *Chicago & North Western Transp. Co. v. Ry. Labor Execs. Ass'n,* 908 F.2d 144, 148 (7th Cir. 1990).

Minor disputes are governed by Section 3 of the RLA, which mandates binding arbitration and forbids unions from striking. 45 U.S.C. § 153; *see also, Bhd. of Maint. of Way Emps. v. Atchison,* 138 F.3d 635, 638 (7th Cir. 1997). Major disputes, by contrast, involve a potentially long course of bargaining in which the parties must maintain the status quo, and afterward, if there is no resolution, the union may strike. 45 U.S.C. §§ 152, 156; *see also, Bhd. of Maint. of Way Emps.,* 138 F.3d at 638. The upshot: because the RLA compels arbitration of minor disputes, this Court lacks subject-matter jurisdiction over such disputes.

Connex has moved to dismiss the case pursuant to Rule 12(b)(1), arguing that this is a minor dispute requiring arbitration. In considering a motion to dismiss, the Court must accept the complaint's factual allegations as true, but the Court may also consider evidence beyond the complaint in order to resolve the question of subject-matter jurisdiction. *See, United Transp. Union v. Gateway Western Ry.,* 78 F.3d 1208, 1210 (7th Cir. 1996). Even at this early stage, there is sufficient evidence in the record to decide the jurisdictional question. The parties do not contest the operative facts, and both highlight the same language relevant to the CBA. The Brotherhood has also provided

exhibits for the Court to consider, including the waiver letter signed by Snyder, the termination letter from Connex to Snyder, and a letter from SFRTA to Connex.

### III. ANALYSIS

Resolution of this case is fairly straightforward; the dispute at issue is a minor one. It involves a question of interpretation of the CBA between the Brotherhood and Connex. Minor disputes are "those involving the interpretation or application of existing labor agreements." *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 256 (1994). Here, the CBA mandates a formal investigation prior to an employee's termination. Thus, the question of whether Snyder was entitled to such an investigation turns on interpretation of the CBA's language.

The waiver agreement muddies the waters somewhat, but not enough to change the nature of the dispute. It is true that the agreement altered a provision in the CBA – Snyder waived his right to a formal investigation in exchange for certain stipulated punishments. But the waiver agreement was just another contract negotiated between the Brotherhood, Snyder, and Connex. As such, it is effectively another collective bargaining contract, and the question of whether Connex breached it by terminating Snyder is within the ambit of the arbitrators. *Cf. Bhd. of Locomotive Eng'rs. v. Atchison,* 768 F.2d 914, 920-21 (7th Cir. 1985). If Connex did breach, it seems plausible that Snyder would regain his

right to a formal investigation. Nothing in the waiver letter sought to displace the CBA entirely.

To emphasize, the waiver letter applied to Snyder only, not to all Brotherhood members or to the CBA generally. It is somewhat unusual for a union to bring an RLA claim for an adverse employment action taken against only one member – the threat of strike seems remote. Typically, when only one union member is affected, a plaintiff brings claims arising under other provisions of federal and state law (such as breach of contract), and the question is whether the RLA preempts those claims. *See, e.g., Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246 (1994); *Monroe v. Missouri Pac. R.R. Co.,* 115 F.3d 514 (7th Cir. 1997). Here, the only claims the Brotherhood has are for declaratory and injunctive relief under the RLA. Interestingly, even if the dispute were a "major" one, the RLA still mandates an extensive process of bargaining and mediation, and there is no indication in the complaint or supporting briefs whether the Brotherhood has exhausted these procedures.

Regardless, the Court does not believe this is a major dispute. As the Supreme Court has noted,

> [Major disputes are] disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.

*Consol. Rail Corp.,* 491 at 302 (citing *Elgin, J & E Ry. v. Burley,* 325 U.S. 711, 723 (1945)). Here, the dispute is specific to one employee, it arose out of existing agreements that were negotiated between Connex and the Brotherhood, and it implicates a right vested in the past (namely, the right to a formal investigatory hearing prior to termination). As the dispute is minor within the meaning of the RLA, the Court lacks subject matter-jurisdiction.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion to Dismiss [ECF No. 11] is granted. The case is dismissed with prejudice.
**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

Dated: 5/2/2016